**Kerry Ross BOREN and Lisa Lee Boren, Plaintiffs–Appellants,**

**v.**

**Gary W. DELAND, M. Eldon Barnes, Bill Johnson, Noah Webb, Jim McDonald, Erika Gee, John Does 1–10, Defendants–Appellees.**

No. 91–4182.

United States Court of Appeals, Tenth Circuit.

March 9, 1992.

Kerry Ross Boren and Lisa Lee Boren, pro se.

Frank D. Mylar, Asst. Atty. Gen., Salt Lake City, Utah, for defendants-appellees.

Before SEYMOUR, ANDERSON and BALDOCK, Circuit Judges.

SEYMOUR, Circuit Judge.

Plaintiff Lisa Lee Boren appeals the district court's judgment for Utah State Prison officials in this action under 42 U.S.C. § 1983 (1988). Ms. Boren's husband is an inmate at the Utah State Prison. Prior to being allowed to visit him in November 1988, Ms. Boren was asked by prison authorities to consent to a search to determine whether she was wearing inappropriate clothing in violation of visiting room policy. Ms. Boren would not have been permitted to visit had she not consented to the search. She assented and removed her shoes and jeans in the presence of an officer and two medical technician witnesses. Ms. Boren contends that the search violated the Fourth Amendment and caused her significant emotional distress. After a bench trial, the district court found that the search was based upon reasonable suspicion, and that Ms. Boren had consented. Because we agree that the officers involved had reasonable suspicion that Ms. Boren was in violation of prison policy, we affirm.

Ms. Boren has regularly visited her husband for more than six years. On several of these occasions, other prison visitors complained that Ms. Boren wore white denim jeans with a hole in the crotch and that she and her husband had engaged in inappropriate sexual conduct during visiting hours. Officer Newell Webb had also observed Ms. Boren wearing the white denim jeans and noticed the hole. The wearing of such clothing during a visit violates Utah State Prison regulations. On the day of the search, Ms. Boren was wearing a pair of white denim jeans. Upon observing the jeans, Officer DeMunbrun notified Officer Webb. After conferring with his supervisor, Officer Webb ordered the search. The search was conducted in the privacy of a women's rest room and no hole was found in the jeans. Ms. Boren was permitted to visit her husband. On appeal, Ms. Boren contends that the search violated her Fourth Amendment rights.

■ Prison visitors do not abandon their constitutional rights when they enter a penitentiary. "To be sure, those visiting a prison cannot credibly claim to carry with them the full panoply of rights they normally enjoy. But neither may they constitutionally be made to suffer a wholesale loss of rights—nor even one commensurate with that suffered by inmates." *Blackburn v. Snow*, 771 F.2d 556, 563 (1st Cir. 1985); *Daugherty v. Campbell*, 935 F.2d 780, 786 (6th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992). Thus, Ms. Boren had a legitimate expectation of privacy when she entered the prison to visit her husband. The question for us is whether, under the facts in this case, her constitutional rights were violated.

■ Other circuits have concluded, after weighing the state's legitimate interest in prison security against the privacy rights of prison visitors,[1] that a visitor may only be subjected to a strip search if the search is supported by reasonable suspicion. *Daugherty*, 935 F.2d at 786–87; *Thorne v. Jones*, 765 F.2d 1270, 1276–77 (5th Cir. 1985); *Hunter v. Auger*, 672 F.2d 668, 673–75 (8th Cir.1982).

"To justify the strip search of a particular visitor under the reasonable suspicion standard, prison officials must point to specific objective facts and rational inferences that they are entitled to draw from those facts in light of their experience." *Hunter*, 672 F.2d at 674. This standard also requires that the suspicion be individualized. *See Cochrane v. Quattrocchi*, 949 F.2d 11, 13–14 (1st Cir.1991); *Hunter*, 672 F.2d at 675. We need not decide whether such a standard is constitutionally required because it is met under the facts of this case. We decide only that a search supported by reasonable suspicion is constitutionally permissible.

■ Here, the district court's fact findings support the actions of prison authorities. Several persons, including one of the officers involved in ordering the search, had previously observed Ms. Boren wearing the offending clothing. The search was therefore supported by reasonable individualized suspicion and not in violation of Ms. Boren's constitutional rights.[2] Without proof of a deprivation of rights protected by the Constitution or laws of the United States, Ms. Boren may not recover under section 1983.

We find no merit in Ms. Boren's other arguments.

---

1. "One's anatomy is draped with constitutional protection.... [A] strip search, regardless how professionally and courteously conducted, is an embarrassing and humiliating experience." *Hunter v. Auger*, 672 F.2d 668, 674 (8th Cir.1982) (citations omitted). Because Ms. Boren was forced to disrobe, we consider this to be a strip search. We do not think it necessary to distinguish between searches of this type and visual body cavity searches. The standard adopted is applicable to all strip searches.

2. The district court also found that Ms. Boren consented to the search. The only circuit which has addressed the question held invalid as a matter of law consent obtained by putting a would-be visitor to the choice of consenting to a strip search or leaving the prison. *See Cochrane*, 949 F.2d 11, 14 (1st Cir.1991); *Blackburn*, 771 F.2d 556, 566–68 (1st Cir.1985). Because we hold that the search here was constitutionally permissible in the absence of consent, we need not decide whether Ms. Boren waived the protections of the Fourth Amendment by consenting.

Accordingly, the judgment of the district court is AFFIRMED.